IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ATEF K. § | |
| § | |
| VS. § | CA No. _____ |
| § | |
| CISCO SYSTEMS, INC. and § | |
| CISCO SYSTEMS, INC. § | |
| WELFARE BENEFIT PLAN § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

ATEF K., Plaintiff, files this Original Complaint asserting causes of action in law against Cisco Systems, Inc. and Cisco Systems, Inc. Welfare Benefit Plan, Defendants.

## I.
## PARTIES

1. Plaintiff, Atef K. ("Plaintiff") is a resident citizen of Houston, Texas. He brings this action under the pseudonym "Atef K." due to the highly sensitive nature of his disability and the very personal allegations disclosed in his treatment.

2. Defendant, Cisco Systems, Inc. ("Cisco"), is a domestic or foreign company doing business in the state of Texas, and can be served with process by serving Cisco Systems, Inc., 170 Tasman Dr., San Jose, CA 95134-1706, Attention: Legal Department, or wherever it may be found.

3. Defendant, Cisco Systems, Inc. Welfare Benefit Plan ("Plan"), is an employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to disability benefits. The Plan can be served with process by serving Cisco Systems, Inc., 170 Tasman Dr., San Jose, CA 95134-1706, Attention: Legal Department, or wherever it may be found.

1

## II.
## JURISDICTION AND VENUE

4. This action against Cisco and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and may be found in this district, and this District and Division is where the breach of contract took place.

6. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7. Plaintiff was hired by Cisco Systems, Inc. in 2006 as a Consulting Systems Engineer. Through the years, he was promoted to other roles. At the time of his disability, Plaintiff was a Senior Manager of System Engineering. As a full time employee, he was enrolled in Cisco's employee welfare benefit Plan that included benefits for short term disability (STD) and long term disability (LTD).

8. Cisco self insured the Plan for STD benefits. The Plan was designed to provide income protection if the covered employee became disabled as a result of injury or sickness. Plaintiff was an eligible employee.

9. Cisco was the Plan Sponsor and Plan Administrator for the STD Plan. Sedgwick Claim Management ("Sedgwick") was the Claims Administrator for the STD Plan.

10. As a Senior Manager of System Engineering, Plaintiff's job required him to regularly communicate with customers, make presentations, socialize during customer events, and assist his team with customer complaints. In September 2016, while on a business trip, Plaintiff began to suffer from chest pain, shortness, of breath, and numbness in his left arm. He was admitted to a hospital, diagnosed with anxiety, told to rest for ten days, and given medications.

11. Plaintiff was later admitted to hospitals in San Jose and Toronto with additional symptoms of anxiety and depression.

12. Plaintiff's anxiety and depression stemmed from work related stress and the extreme pressure to meet Cisco's goal related metrics, an integral part of the company's culture. His physicians advised him to take some time off from work. However, his condition worsened with time. Plaintiff's last day of work at Cisco was September 27, 2016. He promptly applied for STD benefits.

13. The Cisco STD Plan provided a maximum of 180 days of STD benefits to employees like Plaintiff. His first day of eligibility for STD benefits was September 28, 2016. His last day of eligibility for STD benefits was March 27, 2017.

14. On November 7, 2016, Sedgwick denied Plaintiff's STD claim, concluding that the medical records it received from Dr. Nabegh Abdelshaheed did not support disability.

15. Seven days before Sedgwick denied the claim, Dr. Abdelshaheed completed an Attending Physician's Statement noting that Plaintiff should stay home from work and was only able to concentrate for 15-30 minutes at a time. Dr. Abdelshaheed concluded that Plaintiff should work at a less demanding job.

16. On November 28, 2016, Plaintiff appealed Sedwick's denial of his claim. He pleaded, "I am not a doctor and do not know what information you would need to support the claim." He asked Sedgwick and Cisco to contact his doctors for additional evidence supporting his STD claim.

17. On December 2, 2016, Plaintiff submitted additional medical evidence supporting his STD claim. Five days later, Dr. Abdelshaheed wrote a letter noting that Plaintiff continued to suffer from short concentration spans of 15-30 minutes, memory issues, and depression.

18. In December 2016, Sedgwick sent some of Plaintiff's medical records to Network Medical Review ("NMR"), a third party company hired by Cisco and/or Sedgwick to review Plaintiff's claim.

19. On December 28, 2016, Dr. Tahir Tellioglu of NMR reviewed some of Plaintiff's medical records. He concluded that there was no evidence of psychiatric impairments. He also concluded that Plaintiff's inability to work was due to "work related stressors, not a psychiatric condition".

20. The Cisco STD Plan did not contain an exclusion for "work related stressors" from its definition of disability.

21. One day after Dr. Tellioglu's review, Sedgwick denied Plaintiff's STD appeal. In doing so, it concluded that there were "no clinical findings to support any disability". It also concluded that Plaintiff's symptoms were "self reported".

22. The Cisco STD Plan did not contain an exclusion for self reported symptoms from its definition of disability.

23. In February 2017, Plaintiff began to see psychiatrist Nnamdi Ugwunze. Dr. Ugwunze

noted that his symptoms of lack of concentration, lethargy, and low mood were highly indicative of depression.

24. Sedgwick closed Plaintiff's STD claim on March 3, 2017.

25. On March 28, 2017, Plaintiff began to see Dr. Amin Muhammed. Dr. Muhammed diagnosed him with panic disorder and major depressive disorder, with features of anxiety. That same day, Dr. Abdelshaheed noted that Plaintiff was unable to perform work of any kind.

26. On August 23, 2017, Dr. Abdelshaheed noted that Plaintiff remained unable to work due to panic disorder, anxiety, and insomnia. He remained unable to work.

27. On September 14, 15, and 26, 2017, Plaintiff submitted additional evidence to Sedgwick supporting his STD claim. These included medical records from Dr. Abdelshaheed, Dr. Ugwunze, and Dr. Muhammed.

28. On October 13, 2017, Cisco advised that it had received the additional evidence. However, it stated that Sedgwick's denial was final. On information and belief, Sedgwick and/or Cisco have refused to review this additional evidence.

29. Cisco's failure to review or consider the supplemental documents provided by Plaintiff in September 2017, less than 9 months after denying his appeal, violated the Fifth Circuit's holding in *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287 (5th Cir. 1999). It also violated Cisco's fiduciary duty to Plaintiff.

30. Having exhausted his administrative remedies, Plaintiff brings this action to recover the STD benefits promised in the Plan.

## IV.
## CLAIMS & CAUSES OF ACTION

31. Cisco self insured the Cisco Systems, Inc. Welfare Benefit Plan for STD benefits. The

Plan was designed to provide income protection if the covered employee became disabled as a result of injury or sickness. Plaintiff was an eligible employee.

32. The Cisco Systems, Inc. Welfare Benefit Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq*. Cisco is the Plan Administrator, and Sedgwick is the Claims Administrator.

33. As a Plan Administrator, Cisco must handle claims for the benefit of the Plan and Plan beneficiaries, and deliver the benefits promised in the Plan. As a fiducoary, it must investigate claims in a fair, objective, and evenhanded manner.

34. If Cisco appoints a Claims Administrator, it must appoint an appropriate Claims Administrator who investigates claims in a fair, objective, and evenhanded manner.

35. Cisco and/or Sedgwick's adjustment or "adjudication" of Plaintiff's STD claim was instead biased and outcome oriented. This was in part reflected by its denial of Plaintiff's claim, even after being presented with evidence of his ongoing disability. It was also reflected in Cisco and Sedgwick's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively review his claim.

36. Cisco and/or Sedgwick unreasonably relied on NMR, a third party medical record review company, to review some of Plaintiff's medical records. NMR derives the vast majority of its income from performing medical record reviews for insurance companies and Claims Administrators, including Sedgwick. On information and belief, Sedgwick has paid NMR hundreds of thousands of dollars or more to review medical records, creating a financial incentive for NMR to determine that claimants such as Plaintiff are not disabled.

37. Cisco and/or Sedgwick's interpretation of the Plan and the terms of the Plan were not legally correct. It was also contrary to a plain reading of the Plan.

38. Cisco and/or Sedgwick's interpretation of the Plan and Plan language was contrary to that of the average Plan participant. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Plan language upon which Cisco and/or Sedgwick based their denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Cisco.

39. Cisco and/or Sedgwick's denial was made without substantial supporting evidence. The decision to deny Plaintiff's STD claim was instead based upon rank speculation and guesswork. Cisco and/or Sedgwick's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

40. At all material times, Sedgwick was acting on behalf of Cisco and the Plan and in its own capacity as and Claims Administrator.

41. Cisco's denial of Plaintiff's STD claim breached the terms of the Plan. Its breach was in violation of 29 U.S.C. §1132(a)(1)(B), entitling Plaintiff to the STD benefits to which he is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Plaintiff now sues.

## V.
## STANDARD OF REVIEW

42. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

43. The Plan may contain a discretionary clause or language that Cisco may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Plan, and determine the facts. Cisco's denial of the STD claim under this standard of review, if any, was an abuse of discretion. It was arbitrary and

capricious.

44. Alternatively, the standard of review of this claim should be *de novo,* affording Cisco no discretion in its interpretation of the terms of the Plan, nor in its factual determinations.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

45. Plaintiff requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. He is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

46. The Cisco Plan does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Plaintiff thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to him for his STD claim, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

47. Plaintiff seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

48. Atef K., Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendants Cisco Systems, Inc. and Cisco Systems, Inc. Welfare Benefit Plan, and issue judgment against each

Defendant as follows:

a.  Pay to Plaintiff all benefits due and owing in accordance with the terms of the Plan, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

b.  Pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

c.  All such other relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

                                              Respectfully submitted,

By:_____
James C. Plummer, TBA #16075700
Federal I.D. No. 3692
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
4203 Montrose Blvd., Suite 260
Houston, Texas 77006
(713) 526-0200
(832) 615-2665 (Fax)
Jplummer@bergplummer.com
Araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF